UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| LISA WYATT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:20-CV-440-HAB |
| | ) | |
| DEKALB COUNTY GOVERNMENT, | ) | |
| DEKALB COUNTY PROBATION | ) | |
| DEPARTMENT, DEKALB COUNTY | ) | |
| BOARD OF COMMISSIONERS, CHIEF | ) | |
| LAPHAM, AND DOTTY MILLER | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff, Lisa Wyatt, sued the above-captioned Dekalb County entities (the County Defendants), Chief Probation Officer Michael Lapham, and Human Resources Manager Dotty Miller under the Age Discrimination and Employment Act (ADEA) after she was terminated from her employment as a probation officer. (Second Am. Compl., ECF No. 45). Presently before the Court is the Defendants' Motion to Dismiss (ECF No. 47) filed on May 10, 2021. Plaintiff responded in opposition (ECF No. 51) on May 26, 2021 to which Defendants replied (ECF No. 52) on June 2, 2021. Because the Court concludes that Plaintiff was not an "employee" under the ADEA, the Defendants' Motion to Dismiss will be GRANTED.

**APPLICABLE STANDARD**

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008). The allegations,

1

however, must "give the defendant fair notice of what the...claim is and the grounds upon which it rests," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (internal citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## **FACTUAL ALLEGATIONS**

The following facts are not necessarily objectively true, but, as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Second Amended Complaint and draws all inferences in favor of Wyatt as the non-moving party.

Wyatt alleges that she began working for Dekalb County as a probation officer in July 1999. Wyatt, who at all material times related to the Second Amended Complaint was over 40 years old, held her position as a probation officer until her termination in November 2019. Wyatt's duties as a probation officer included providing supervision to individuals in cases assigned to her, completing pre-sentence investigation reports, reporting probation violations, attending court hearings, and attending to various other ministerial matters.

Wyatt asserts that she worked under three different Probation Chiefs, the last of which was Defendant Michael Lapham. Wyatt asserts that Chief Lapham, who is at least ten years younger than Plaintiff, routinely filled open positions with individuals younger than Wyatt and, after she was terminated, her position was filled by someone under 40 years old.

2

In the final six months of her employment, Wyatt alleges that another probation officer, Bailey Gasper (Gasper), began verbally abusing her. On October 16, 2019, she asserts that Gasper, a 24-year-old female, sent her harassing emails. This prompted Wyatt to discuss with Chief Lapham the possibility of filing a formal complaint against Gasper. Chief Lapham inquired as to whether he could assist in resolving the issue between them, but Wyatt wanted to think about it over the weekend. Chief Lapham did not follow up with Wyatt.

On November 12, 2019, Wyatt contends that the final incident of verbal abuse occurred. Wyatt was providing court coverage in the DeKalb Superior Court, at the same time Gasper had a probation hearing for one of her probationers. At some point after the court proceedings ended, Gasper confronted Wyatt, screaming at her and claiming that Wyatt and Gasper's probationer were talking about Gasper. Subsequent to this encounter, Wyatt asserts that Chief Lapham came to the courthouse to speak with her but they were unable to converse at that time. Wyatt emailed Human Resources Manager Dotty Miller the same day regarding the incident and met with her on November 13, 2019, to discuss the ongoing hostilities between the two. After speaking with Miller, Wyatt spoke with Chief Lapham regarding the issues between her and Gasper. In the meantime, Wyatt contends that Gasper posted a SpongeBob meme on Facebook that showed SpongeBob about to cry because someone raised their voice.

Wyatt did not hear from either Miller or Chief Lapham for the remainder of the week. However, six days later, on November 19, 2019, her employment was terminated because "of the cumulative issues." She asserts she was terminated and retaliated against in violation of the ADEA.

## **DISCUSSION**

Before reaching the thrust of the County Defendants' Motion to Dismiss, the Court first addresses Plaintiff's concession that the individual claims against Chief Lapham and Miller should be dismissed as they are not "employers" for purposes of the ADEA. As a general proposition, only an "employer" may be liable under the ADEA. 29 U.S.C. § 623(a). Indeed, individuals "who are not otherwise employers cannot be sued under Title VII or the ADEA." *Cianci v. Pettibone Corp.*, 152 F.3d 723, 729 (7th Cir. 1998). Plaintiff concedes that neither Chief Lapham nor Miller are Plaintiff's employer for ADEA purposes. Accordingly, the motion to dismiss is GRANTED as to Chief Lapham and Miller.

Next, the Court turns to the primary focus of the County Defendants' motion, that is, their assertion that dismissal is appropriate because the Plaintiff is not an employee within the meaning of the ADEA. Under the ADEA, it is unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1) (2016). The protections established by the ADEA are extended to anyone defined as an employee under the Act, but precludes "appointee[s] on the policymaking level." 29 U.S.C. § 630(f).[1] In *Opp v. Office of State's Attorney of Cook County*, the Seventh Circuit explained that "[a]n individual is considered an appointee on the policymaking level if 'the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision-making on issues where there is room for principled disagreement on goals or their implementation.'" 630

---

[1]The relevant section of the ADEA that defines the term "employee" excludes from its coverage four types of persons: (1) elected officials; (2) the personal staff of an elected official; (3) appointees on the policymaking level; and (4) "an immediate advisor with respect to the exercise of the constitutional or legal powers of the office." 29 U.S.C. § 630(f). The County Defendants assert only that Wyatt is excluded as an appointee on the policymaking level.

4

F.3d 616, 619–20 (7th Cir. 2010) (quoting *Americanos v. Carter*, 74 F.3d 138, 141 (7th Cir. 1996)). When considering whether an individual is a policymaking employee, "a court is to examine 'the powers inherent in a given office, as opposed to the functions performed by a particular occupant of that office .... [W]e emphasize[ ] the functions of the office involved, not the officeholder.'" *Id.* at 620 (alteration in original) (quoting *Tomczak v. City of Chicago*, 765 F.2d 633, 640–41 (7th Cir. 1985)). "[D]etermining the powers inherent in a given office may be done without the aid of a finder of fact 'when the duties and responsibilities of a particular position are clearly defined by law and regulations.'" *Id.* at 621 (quoting *Vargas–Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 972 (7th Cir. 2001)).

To demonstrate that Wyatt is an appointee, the County Defendants point out that by Indiana statute, "[p]robation officers shall serve at the pleasure of the appointing court and are directly responsible to and subject to the orders of the court." Ind. Code § 11-13-1-1(c). Next, the County Defendants assert that the duties and responsibilities of the probation officer's position are clearly defined in Indiana statutes. They cite Ind. Code §11-13-1-3, which outlines twelve mandatory statutory duties and responsibilities[2] of probation officers, to show that probation officers have

---

[2] The mandatory duties include:

    (1) conduct prehearing and presentence investigations and prepare reports as required by law;
    (2) assist the courts in making pretrial release decisions;
    (3) assist the courts, prosecuting attorneys, and other law enforcement officials in making decisions regarding the diversion of charged individuals to appropriate noncriminal alternatives;
    (4) furnish each person placed on probation under his supervision a written statement of the conditions of his probation and instruct him regarding those conditions;
    (5) supervise and assist persons on probation consistent with conditions of probation imposed by the court;
    (6) bring to the court's attention any modification in the conditions of probation considered advisable;
    (7) notify the court when a violation of a condition of probation occurs;

5

meaningful input into the decision-making of the court. Finally, the County Defendants cite several cases that identify probation officers as holding a policymaking position, albeit in similar, but differing contexts. *See Larson v. Cantrell*, 974 F.Supp. 1211, 1217 (N.D. Ind. 1997) (probation officers are unprotected from political discharge due to policymaking nature of their position); *O'Reilly v. Montgomery Cty*, 2003 WL 23101795, at *5 (S.D. Ind. Feb. 24, 2003) ("as a probation officer, O'Reilly was 'an appointee on the policy making level' under 42 U.S.C. § 2000e(f) and 29 U.S.C. § 203(e)(2)(C) and was not an 'employee' for purposes of Title VII and the FMLA."); *see also, Americanos,* 74 F.3d at 144 (affirming dismissal under Rule 12(b)(6); deputy attorney general in Indiana is exempt employee under Title VII), *Heck v. City of Freeport,* 985 F.2d 305, 310 (7th Cir.1993) (applying policymaking provision under ADEA to general inspector for local health department, and affirming grant of summary judgment in favor of defendant).

In *Larson*, the court, looking to the duties and responsibilities listed in Ind. Code § 11-13-1-3, stated that "[o]n their face, these duties sound fairly important to a judge's effectiveness. Probation officers appear to have some input in politically sensitive decisions by judges regarding criminal defendants' bail, sentencing, and rehabilitation." *Larson*, 974 F. Supp. at 1217. Ultimately, the court concluded, "[a]t a minimum, those duties 'authorize' probation officers to

---

(8) cooperate with public and private agencies and other persons concerned with the treatment or welfare of persons on probation, and assist them in obtaining services from those agencies and persons;
(9) keep accurate records of cases investigated by him and of all cases assigned to him by the court and make these records available to the court upon request;
(10) collect and disburse money from persons under his supervision according to the order of the court, and keep accurate and complete accounts of those collections and disbursements;
(11) assist the court in transferring supervision of a person on probation to a court in another jurisdiction; and
(12) perform other duties required by law or as directed by the court.

Ind. Code § 11-13-1-3.

have 'indirect' yet 'meaningful input' on politically sensitive discretionary decisions by judges regarding bail, sentencing, and defendant rehabilitation." *Id.*

Similarly, in *O'Reilly*, the court examined an identical definition of employee as in the ADEA, but in the context of Title VII and the FMLA. There, the court first determined that the issue was properly decided on a motion to dismiss. *O'Reilly*, 2003 WL 23101795 at *9 ("whether a probation officer is an exempt employee under Title VII and the FMLA is a question of law and properly decided on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)"). Next, the Court looked to the statutory requirements of the position and concluded:

> While the duties that O'Reilly herself actually performed might have been more limited, under the statute, the job of a probation officer necessarily requires constant decision-making and by definition involves the exercise of a great deal of professional discretion. The probation officer is the professional upon whose recommendations the court relies in coming to important decisions. Each recommendation or decision made by a probation officer may promote or undermine the policies and stature of the prosecuting attorneys, the trial judges, and the state judicial system in general.

*Id.* at *10. The court then concluded that O'Reilly was an "appointee on the policy making level" under the relevant statutes. *Id.*

In response to the County Defendants' argument, Wyatt says very little. In her seven paragraph response, the sole argument she makes on this issue is to plead with the Court that "[t]his cannot be the law" because otherwise "old probation officers could be fired at will because of their age and would have no redress." (ECF No. 51 at 1). Wyatt cites no authorities and does not attempt to distinguish any of the County Defendants' authorities. Given the absence of attention Wyatt places on convincing the Court that the County Defendants are incorrect in their position, the Court is not inclined to reexamine the decisions that have already concluded, in similar statutes, that Wyatt is an appointee on the policymaking level and thus, not an "employee." S*ee Ross v. Adams*, 2017 WL 3034267, at *4 (S.D. Ind. July 18, 2017) ("the policymaking exception in the definition

of employee under the FLSA is nearly identical to the same exception within the ADEA and Title VII."). Accordingly, the Court concludes that Plaintiff has failed to properly assert that she is an "employee" under the ADEA and thus, cannot state a claim for relief under that statute. The Motion to Dismiss is, therefore, GRANTED.

## CONCLUSION

Based on the foregoing, the Motion to Dismiss (ECF No. 47) is GRANTED as to all parties. The CLERK is DIRECTED to enter judgment in favor of the Defendants.

SO ORDERED on June 24, 2021.

s/ *Holly A. Brady*  
JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT